(No. 6402. May 5, 1937.)

WM. P. HEMMINGER, Appellant, v. TRI–STATE LUMBER COMPANY, a Corporation, and TED ISENBURG, A. B. ECKERSELL and LESTER BURT, as Individuals, and as Members of and Doing Business Under the Name of the RIGBY BUSINESS MEN'S CREDIT BUREAU, Respondents.

[68 Pac. (2d) 54.]

698

E. A. Owen, Bash L. Bennett and Wm. P. Hemminger, for Appellant.

Merrill & Merrill and C. A. Bandel, for Respondents.

AILSHIE, J.—This is an action for libel. Appellant, managing owner of a hotel at Rigby, alleges that he enjoyed a

good name and reputation as an attorney at law and business man; that the Rigby Business Men's Credit Bureau was a mutual association organized for the purpose of protecting its members against giving credit to irresponsible debtors, and that they published a document entitled, "Confidential List of Unsatisfactory Accounts, Compiled by Rigby Business Men's Credit Bureau"; that this list was issued at regular intervals, giving the names of persons against whom there were unsettled accounts in favor of any of the members of the organization; and that these lists were distributed among the members and others. It was specifically alleged that on March 25, 1932, such a list was published and distributed, containing between six and seven hundred names, including the name of plaintiff. It is also alleged that, over the name, "The Committee," they mailed out to various parties a printed form of letter, warning persons named in the list "to please get in touch with your creditor at once so that it will not be necessary to have your name on the new revised list to be printed soon," etc., etc. It was also alleged that the defendants, Isenburg, Eckersell and Burt composed the committee which represented the organization, and that the Gem State Lumber Company (now the Tri-State Lumber Company) was a member of the organization and furnished plaintiff's name to be published as one of its ("unsatisfactory") debtors. Plaintiff alleges that he was not a debtor of said defendant, and had not been such for a long time prior thereto; and that the statement was false and maliciously made.

The case was tried to the court and a jury and after plaintiff introduced his evidence and rested his case, motions for nonsuit were made and granted. Judgment of dismissal was thereupon entered, from which this appeal has been taken.

In view of the conclusions which we have reached, concerning the rulings of the court made in the course of the trial, in the admission and rejection of evidence, it will be necessary to reverse the judgment and remand the case for new trial. For that reason, we shall not discuss the sufficiency of the evidence to justify the submission of the case to the jury; nor should anything we may say, in discussing the rulings of the court on the admission or rejection of evidence, be considered

as an expression of our opinion as to the sufficiency or weight of the evidence that was submitted.

That this list was made and published, was established by the witness Ballantyne, who actually typed and mimeographed the list. She prepared the list from a considerable number of individual lists furnished her and, after doing so, distributed the mimeographed list. The defendants by their answer denied the authorship and all responsibility for furnishing the names or causing the list to be published and affirmatively alleged the truth of the matter pleaded as libelous. From plaintiff's standpoint, the remaining essential fact to be shown was whether or not the defendants, or either of them, had anything to do with the preparation and publication of the list. The witness Ballantyne testified:

"Q. Do you remember who gave you this list for you to get out, mimeograph the list as it stands there?

"A. You mean the mimeographed list?

"Q. Yes.

"A. It wasn't handed to me like that. I compiled it from different lists.

"Q. You compiled this list from different lists that were given you?

"A. Yes sir.

. . . . . . . . . . . . . . . . .

"Q. Do you recall, Miss Ballantyne, whether or not Mr. Hemminger asked you where you obtained his name to put on the list? . . . .

"A. No.

"Q. He didn't ask you that question?

"A. I don't recall.

. . . . . . . . . . . . . . . .

"Q. You understand the question now, Miss Ballantyne?

"A. Who gave me the various lists?

"Q. Yes, from which you compiled this one?

"A. I don't remember.

"Q. Do you recall who paid you, if anyone, for getting that list out?

"A. No; I don't.

. . . . . . . . . . . . . . . . .

"Q. Do you know, Miss Ballantyne, how many of these lists you distributed?

"A. No sir."

Her memory seems to have failed her in these respects.

 It is true that this testimony was being given by the witness about four years after the preparation of the list. It was an essential fact for the plaintiff to establish that the defendants were, or some one of them was, responsible for the preparation and publication of the list containing plaintiff's name. The testimony of the stenographer (Ballantyne), as to who furnished the information and caused her to publish the list, was not secondary or hearsay evidence. A statement, made by her to that effect to a third party and repeated by such party as a witness, would ordinarily be hearsay. Now the question, with which we are confronted, is whether or not, after this witness disclaimed having any recollection as to who supplied her with this information and caused her to publish the list, the plaintiff might call witnesses who found copies of the list in her possession, immediately after they were made, and discussed the matter with her, and have them testify of the statement made by her as to the names of the parties who furnished the information and caused the publication. We think the answer to this inquiry is furnished by the testimony of the witness Attridge, who testified that a committee was appointed "To investigate credit business, and formulate a credit men's association"; and that the committee consisted of "Rolly Hogge (now deceased); Mr. Lester Burt; Mr. Eckersell; and Mr. Isenburg"; and that in pursuance of their appointment as such committee they "formulated an organization known as a credit men's bureau." He was then handed Plaintiff's Exhibit "A" (being a copy of the list of names) and he thereupon identified it as being "like" the list which had been furnished him. He thereupon testified:

"Q. Where did you see one of these lists?

"A. In my own place of business.

"Q. Did you have one of them?

"A. Yes, sir.

"Q. Where did you get it?

"A. From the secretary of the organization.

"Q. *Who was the secretary of the organization?*

"A. *Vera Ballantyne.* Is that her name?

"Q. Yes. Did she give you one of these lists, or sell you one? . . . .

"A. She gave me one, by virtue of being a member of the association."

He further testified that he paid one of the committee fifty cents for this list, or rather for his membership in the organization, which entitled him to the list. He then testified to subsequently having had conversations with Eckersell and Isenburg concerning the publication of the list, in which they expressed themselves in approval of what had been done. In regard to his conversation with Mr. Isenburg, he testified:

"Q. You may state what was said.

"A. I told him the list was wrong; that it was, in my opinion, illegal to print the list, and I wouldn't have done it. That is the general tone of the conversation.

"Q. What did Isenburg say?

"A. He just smiled.

"Q. What is that?

"A. He smiled, and thought it was all right.

"Q. What did he say?

"A. Never raised no objection.

"Q. Say it was all right? . . . .

"A. He smiled and said he thought it was all right."

His testimony as to the conversation with Mr. Eckersell was substantially to the same effect.

From the foregoing, it will be seen that the witness testified to receiving a list (like Exhibit "A") from Miss Ballantyne and that Miss Ballantyne was the *secretary of the organization* and that Messrs. Eckersell and Isenburg were members of the committee who formed the organization. It follows, therefore, that statements made by the secretary of the organization, Miss Ballantyne, as to who furnished the names comprising the list and who authorized or directed the publication of the list, were competent primary evidence and not hearsay.

Plaintiff called the witness A. F. Johnson who testified to having a conversation with Miss Ballantyne in Mr. Cummings' office some time about the latter part of March, 1932, at which

time he talked with her in regard to the making and publication of this list and was asked the question:

"What was the occasion for you to talk to her about the matter? . . . .

"A. I went over to see who had turned my name in on the list.

"Q. Did she give you the information? . . . .

"A. Yes.

"Q. What did she say?

"Mr. MERRILL: Object to the question on the ground it would be hearsay, incompetent and immaterial, and no foundation laid for it.

"The COURT: Sustained."

This ruling of the court is assigned as error. The ruling was erroneous. The witness should have been allowed to answer the question. Miss Ballantyne testified to compiling the completed list from lists of names turned in and her statement, as to who furnished the names, was primary evidence and not hearsay. The witness Johnson then testified:

"Q. Did she show you a list of names that was turned in by the Gem State Lumber Company? . . . .

"A. Yes sir.

"Q. Now you may state what the list contained, describe it. . . . .

"A. Was it what the list contained?

"Q. Yes, describe the list, what it was.

"A. Typewritten on an ordinary piece of typewriter paper, Gem State Lumber Company heading on it, and had my name down on the list. I would say there was probably twenty-five or thirty other names on the list. The paper wasn't full. I asked how to get the name off, and she said— . . . .

"By Mr. HEMMINGER:

"Q. Did you see my name on that list? . . . .

"A. Yes sir.

"Q. Where did she get that list from?

"Mr. MERRILL: Object to that on the ground it calls for a conclusion of the witness; incompetent and immaterial as to where she got it.

"The COURT: Sustained."

The ruling of the court in sustaining the objection to the foregoing question was erroneous for the reasons as heretofore stated with reference to the questions asked of the witnesses Johnson and Attridge. The examination proceeded:

''Q. Did she say that was the list that was turned in by the Gem State Lumber Company?

''Mr. MERRILL: Object to the question on the ground that it is leading, and upon the further ground it calls for a conclusion of the witness; is hearsay, and incompetent.

''The COURT: Sustained.''

The latter question was leading and on that ground the ruling can be sustained.

The compiled list (Plff's Exhibit ''A'') had various figures (2, 3, 4, 5 or 6) following different names. The witness Call was asked if he knew what the figures following a name on the list meant and he answered: ''The number behind each name was the number of businesses that turned that party's name in.'' Later on cross-examination he said that he learned the foregoing fact from a statement made to him by the stenographer (Miss Ballantyne). Thereupon the court struck this testimony on the ground that it was hearsay. This was error. This was primary evidence—the stenographer was, for this special purpose, the agent of the persons who caused her to compile and publish the list from the various individual lists furnished her; and she knew *at the time who* furnished them and *who* caused the compiled list to be made and published, and her statement of that fact was admissible. It stood on the same footing as if made by defendants. A similar error was committed in sustaining the objection to the following question asked of plaintiff when on the stand: ''Did Miss Ballantyne, at that time, state to you from whom she had received this list?''

Counsel for the Tri-State Lumber Company has argued, in support of the order granting the nonsuit as to the company, that, since there is no evidence to show that the lumber company was a member of the committee or a member of the Rigby Business Men's Association, it was therefore in no way connected with the transaction. As the evidence that was admitted stands in the record, there may not have been enough to take the case to the jury, as to the lumber

company. In view, however, of the fact that the erroneous rulings herein indicated excluded certain testimony, it will be necessary to reverse the order as to the lumber company as well as with reference to the other defendants. If it should finally appear that the company furnished appellant's name as a debtor for the purpose of having it published in this list, then, of course, the lumber company would, so far as the question of liability and nonliability is concerned, fall in the class with the other defendants.

It has been argued here by respondents, in support of the order granting a nonsuit, that since the plaintiff failed to plead and prove "special damages," he could not recover on any theory, and that consequently the granting of the nonsuit was not prejudicial. The answer to that contention is that the issue is not before us in any manner that enables this court to pass on the question. The defendants filed general and special demurrers to the amended complaint, and one of the grounds of the special demurrers is: "It is not alleged in said amended complaint in what manner or how the plaintiff has been injured or in what amount." These demurrers were overruled and no cross-appeal has been prosecuted, and, of course, the appellant is not complaining of the action of the court in overruling the demurrers.

Counsel for respondent lumber company have argued several matters as constituting errors committed against the company, but since the lumber company is not an appellant, and those questions are not before us on assignments of error, we are not in position to discuss or pass on them in this opinion. It will be unnecessary to pass on the assignment relative to the cost bill.

For the errors herein considered and passed upon, the judgment must be reversed, and it is so ordered, and the cause is remanded for a new trial upon the pleadings as they now stand or upon any amendments the court in its discretion may allow.

Costs awarded to appellant.

Morgan, C. J., and Holden, Budge and Givens, JJ., concur.